UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONELL SIMMS,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>          Defendant. | Case No.18-cv-03897-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 27 |

Plaintiff Lionell Simms seeks social security benefits for a combination of mental and physical impairments, including strokes, bad vision, memory loss, spinal arthritis, left arm arthritis, organic mental disorder, affective disorder, and substance addition disorder. (Administrative Record ("AR") 15, 219, 234.)  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1]  (Dkt. Nos. 19, 27.[2])  Because the Administrative Law Judge ("ALJ") failed to provide specific and legitimate reasons supported by substantial evidence for her weighing of the medical evidence the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 3, 10.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if

the ALJ did not apply proper legal standards." *Id*.

**PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act") on June 25, 2014 alleging a disability onset date of July 1, 2010. (AR 15, 179.) His application was denied both initially and upon reconsideration. (AR 15.) Plaintiff then submitted a written request for a hearing before an ALJ and his hearing was held before ALJ Evangelina Hernandez on March 13, 2017. (*Id*.) After the hearing, the ALJ held the record open at the claimant's request to submit an additional medical source statement which he did in May 9, 2017. (AR 15, 646) A month later, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-24.) Plaintiff filed a request for review of the ALJ's decision which was denied on May 4, 2018 making the ALJ's decision the Commissioner's final decision. (AR 1-3.) Plaintiff commenced this action for judicial review of the Commissioner's decision on June 28, 2018, pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE RECORD**

The ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Act taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 15-24.)

At Step One, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his June 25, 2014 application date. (AR 17.)

At Step Two, the ALJ found that Plaintiff has the following severe impairments: depression, degenerative disc disease of the lumbar spine, and alcohol abuse. (*Id*.)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 416.926). (AR 18.) For Plaintiff's physical impairments, the ALJ considered listing 1.04 (disorders of the spine). For Plaintiff's mental impairments, the ALJ considered listing 12.04 (depressive, bipolar and related disorders). (*Id*.) The ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation such that the Paragraph B criteria were not

satisfied. (AR 18-19.)

The ALJ next considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except that he is limited to simple (SVP levels 1 and 2), routine, and repetitive tasks such that he can work a low stress job with only occasional decision making required and with only occasional changes in the work setting.  (AR 19.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 20.)  The ALJ gave significant weight to the opinions of the neurological consultative examiner Dr. Farah Rana and the psychological consultative examiner Dr. Spivey.  (AR 22.)  On the other hand, the ALJ gave little weight to the opinion and assessment of Plaintiff's examining psychologist Dr. Lesleigh Franklin and reduced weight to the medical source statement submitted by Plaintiff's treating physician Dr. Farrell Barnett.  (*Id.*)

At Step Four, the ALJ found that Plaintiff did not have any past relevant work.  (AR 23.)

At Step Five, the ALJ concluded that Plaintiff was not disabled because there were jobs that exist in significant numbers in the national economy that he could perform including laundry worker, laborer stores, and dishwasher.  (AR 23-24.)  The ALJ based this determination on the testimony of the vocational expert and Plaintiff's residual functional capacity, age, education, and work experience. (AR 24.)

## DISCUSSION

Plaintiff raises numerous issues with respect to the ALJ's decision.   First, Plaintiff contends that the ALJ's Step Two determination was in error because the ALJ failed to consider whether Plaintiff's PTSD, neurocognitive disorder, anemia, asthma, hyperlipidemia, and gout were severe impairments.  Second, Plaintiff insists that the ALJ erred in failing to consider the combined effects of these impairments at Step Three.  Next, Plaintiff maintains that the ALJ erred in her weighing of the medical evidence and with respect to her credibility determination.  Finally,

4

Plaintiff insists that the ALJ's RFC determination is not supported by substantial evidence. Because Plaintiff's arguments regarding the weighing of the medical evidence impact the ALJ's alleged errors at the other steps in the sequential evaluation, the Court's analysis begins there.

### A.  The ALJ's Weighing of the Medical Evidence

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)).  A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830.

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3) the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(5). In conducting this review the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Plaintiff contends that the ALJ erred in giving significant weight to state agency

consultative examiners Drs. Rana and Spivey, but little or reduced weight to the opinions of examining psychologist Dr. Franklin and treating physician Dr. Barnett, respectively. Plaintiff insists that the ALJ's rationale that Drs. Franklin and Barnett's opinions were inconsistent with the record as a whole and overly reliant on Plaintiff's subjective statements is vague and conclusory and does not constitute specific and legitimate reasons supported by substantial evidence for rejecting their opinions. Plaintiff maintains that the ALJ's proffered rationale for giving Drs. Rana and Spivey's opinions significant weight was likewise vague and conclusory.

### 1) Mental Impairment Opinion Evidence: Dr. Franklin and Dr. Rana

The ALJ found that Dr. Franklin's opinion (diagnosing Plaintiff with major depressive disorder, recurrent severe with psychotic features, posttraumatic stress disorder, unspecified alcohol-related disorder, and unspecified major neurocognitive disorder) was entitled to little weight because (1) it was inconsistent with the record overall, (2) appeared to rely heavily on Plaintiff's subjective complaints, and (3) she described Plaintiff as "having impairment in occupational functioning" which was "vague." (AR 22.) In contrast, the ALJ gave significant weight to the opinion of Dr. Spivey that Plaintiff had alcohol dependence and depressive disorder, not otherwise specified, and that he only had moderate limitations in his ability to maintain adequate pace or complete takes and moderate ability to withstand the stress of a routine workday. (*Id.*)

The ALJ's generic statement that Dr. Franklin's opinion was inconsistent with the overall record is not a specific and legitimate reason supported by substantial evidence for rejecting her opinion. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (internal citations and quotation marks omitted). Here, the ALJ's statement is not supported by *any* cites to the record, other than to say that the record fails to document hallucinations or symptoms consistent with PTSD. To the extent that the Commissioner now offers post-hoc record support for the ALJ's statement, "[l]ong-standing principles of administrative law require us to

review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin*., 554 F.3d 1219, 1225 (9th Cir. 2009). Accordingly, the ALJ's finding that Dr. Franklin's opinion is contradicted by the overall medical evidence is not supported by substantial evidence given that it fails to cite to any actual evidence, let alone discuss any particular part of Dr. Franklin's opinion and explain why the opinion is contradicted by a particular part of the record. *See Bray*, 554 F.3d at 1225 (9th Cir. 2009) (noting that courts will not "attempt to intuit what the [ALJ] may have been thinking"); *Garrison*, 759 F.3d at 1012-13 (holding that an ALJ errs when he rejects a medical opinion "while doing nothing more than ... criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Likewise, the ALJ's finding that Dr. Franklin's opinion is entitled to little weight because it relied heavily on Plaintiff's subjective complaints ignores that Dr. Franklin administered a series of tests to Plaintiff. In particular, Dr. Franklin administered the Beck Anxiety Inventory, Beck Depression Inventory, Miller Forensic Assessment of Symptoms, Mini Mental State Examination, Repeatable Battery for the Assessment of Neuropsychological Status Form A, Trail Making A & B. (AR 613.) The ALJ did not discuss these tests or their results *at all*. As such, substantial evidence does not support her conclusion that Dr. Franklin's opinion was based on Plaintiff's subjective complaints given that the record shows, at least in part, it to also have been based on the results of psychological testing.

Further, with respect to the ALJ's finding that Dr. Franklin's statement that Plaintiff had an impairment in occupational functioning was "vague," this too is not supported by substantial evidence. Dr. Franklin actually stated that "Global Assessment of Functioning would describe Mr. Simms as having impairment in occupational functioning." (AR 618.) The Global Assessment of Functioning or GAF scale reflects the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV); *see also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the

individual's need for treatment."). There is therefore nothing vague about Dr. Franklin stating that Plaintiff's GAF would describe him an having an impairment in occupational functioning as that is one of the functions the GAF measures.

Finally, the ALJ's rationale for favoring the opinion of Dr. Spivey over that of Dr. Franklin is not supported by substantial evidence. As an initial matter, Dr. Spivey's report was made two years before Dr. Franklin's. (*Compare* 412 (Dr. Spivey's report based on a 9/11/14 examination) *with* AR 613 (Dr. Franklin's report based on a 11/23/16 examination).) Thus, to the extent that the ALJ relies on the fact Dr. Spivey's examination did not reveal the same issues identified by Dr. Franklin, the ALJ erred in failing to consider the passage of time between the two assessments. *See Garrison*, 759 F.3d at 1013 (finding that the ALJ erred in giving great weight to a consultant's opinion which came "very early in [the plaintiff's] course of treatment"). The ALJ's other two rationales—that Dr. Spivey personally examined claimant and that "her opinion is bolstered by her area of expertise"—are equally true of Dr. Franklin who likewise personally examined Plaintiff, who has a PhD in psychology, and is a licensed psychologist.

Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Franklin's opinion and instead giving significant weight to the opinion of Dr. Spivey.

### 2) Physical Impairment Opinion Evidence: Dr. Barnett and Dr. Rana

Next, Plaintiff insists that the ALJ erred in giving significant weight to neurological consultative examiner Dr. Rana while giving reduced weight to the opinion of Plaintiff's treating physician Dr. Barnett. The ALJ found that Dr. Barnett's medical source statement was entitled to reduced weight because (1) the limitations were "rather restrictive" considering that Plaintiff's treatment has been conservative, (2) the objective findings "have largely some evidence of mild degenerative disc disease," (3) the opinion was unsupported by any other probative medical practitioner's opinion, and (4) Dr. Barnett seemed to rely on Plaintiff's subjective complaints. (AR 22.) In contrast, the ALJ gave significant weight to the opinion of state agency consultative examiner Dr. Rana because her "assessment is consistent with the overall record as she was able to examining [sic] the claimant, and he carries significant program knowledge." (AR 22.) The

ALJ's conclusion with respect to the medical opinion evidence regarding Plaintiff's physical impairments is not supported by specific and legitimate reasons or substantial evidence.

First, as with Dr. Franklin's and Dr. Spivey's opinions, the ALJ again fails to note the passage of time between the two opinions. Dr. Barnett's opinion was from May 2017—nearly three years after that of Dr. Rana. *Compare* AR 409 (Dr. Rana's 8/18/14 opinion) *with* AR 646 (Dr. Barnett's 5/9/17 opinion). *See Garrison*, 759 F.3d at 1013.

Second, in concluding that Dr. Barnett's opinion must have been based on Plaintiff's subjective reports of pain, the ALJ ignored that Dr. Barnett had an on-going relationship with Plaintiff having seen Plaintiff as a primary care physician at the Eastmont Wellness Center where Plaintiff received regular medical care from at least December 18, 2014 through 2017. (AR 467, 620.) Further, Plaintiff's treatment records from the Eastmont Wellness Center show consistent reports of back pain, often at an 8/10 level, referrals to physical therapy and a back specialist, and diagnostic evaluations including X-rays of the spine. (AR 546-547 (12/18/14 visit with MRI ordered); AR 540 (2/12/15 visit with report of back pain, referral to physical therapy and a back specialist, spine x-ray ordered); AR 535-537 (3/4/15 visit with pain at 8/10); AR 506-508 (3/25/15 visit with report of "excruciating sharp pain" at 10/10, referred to physical therapy); AR 531-533 (7/2/15 visit with pain at 8/10); AR 505 (7/20/15 visit with physical therapy referral); AR 527-529 (8/19/15 visit pain with pain at 8/10), AR 522-524 (11/18/15 visit with report of pain at 8/10); AR 516 (3/9/16 visit with report of back pain with physical therapy referral); AR 620-622 (1/6/17 visit with pain report at 10/10). Further, the diagnostic imagining supported Plaintiff's reports of pain. Plaintiff's January 24, 2017 X-ray showed "mild diffuse disc bulge is noted form L1-L2 through L4-L5." (AR 625.) His earlier X-ray from February 2015 showed evidence of vascular calcification and "bony spurring mostly in the anterior aspect of the vertebral bodies noticed in L3 and L4 area as well as some lower lumber spondylosis." (AR 507-508.) Accordingly, the ALJ erred when "[s]he failed to recognize that the opinions expressed in check-box form [] were based on significant experience with [Plaintiff] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison*, 759 F.3d at 1013. Indeed, to the extent that the ALJ relied on Dr. Barnett's

opinion being a check-box form, "there is no authority that a "check-the-box" form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

Third, unlike Dr. Barnett's opinion which was based on three years of treatment at the Eastmont Wellness Center, Dr. Rana's opinion was based on her review of only two medical records: an emergency room visit for chest pain in January 2013 and another emergency room visit from January 2012 for "right-sided flank pain after being assaulted." (AR 409.) *See Garrison*, 759 F.3d at 1013 (holding that the ALJ erred in giving greater weight to a consultative physician's opinion where the consultant "admitted in his report that he lacked access to [the plaintiff's] treatment records and statements").

Finally, despite the ALJ repeatedly referring to how Dr. Rana's opinion was "generally consistent with the record," the ALJ did not cite to *any* evidence or portions of the record which were consistent with Dr. Rana's findings. (AR 22.) An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. The ALJ did not do so.

Accordingly, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Barnett's opinion and instead giving significant weight to the opinion of Dr. Rana.

**B. The ALJ's Step Two and Three Listing Determinations**

Plaintiff alleges that the ALJ erred at Step Two and Step Three of the sequential evaluation process because at Step Two she failed to consider Plaintiff's additional diagnoses of PTSD, neurocognitive disorder, anemia, asthma, hyperlipidemia, and gout, and that at Step Three she failed to consider whether these impairments met or equaled a listing. [3] Step Two is "a de

---

[3] While the Court does not reach the issue, it notes that it is not clear from the record that Plaintiff argued that these impairments were severe as there is no reference to them in his application for disability benefits or his pre-hearing statement to the ALJ. (AR 219, 234, 305-309.)

minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Given the Court's conclusion, *supra*, that the ALJ erred with respect to her weighing of the medical evidence generally—which includes medical evidence diagnosing the impairments Plaintiff contends are severe—the Court declines to consider Plaintiff's argument with respect to the severity of his impairments and the listing determination and instead, on remand, directs the ALJ to consider whether these impairments are severe or meet or equal a listing as appropriate when she reweighs the medical evidence.

### C. The ALJ's Adverse Credibility Finding

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citations omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ did not find that Plaintiff was malingering, but she did find that while Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20.) Plaintiff insists that the ALJ erred because she failed to identify which of Plaintiff's statements were inconsistent.

1    While the ALJ certainly could have been clearer with respect to the basis for her credibility

2    finding, the following statements—as identified by the Commissioner—appear to form the basis

3    for the adverse credibility finding: (1) that "in light of the minimal objective findings and

4    treatment, the claimant's alleged symptoms and limitations are not substantiated fully by the

5    record; (2) that the "the claimant does not have a significant work history or a probative history of

6    being unable to work because of severe impairment"; (3) that Plaintiff's "presentation at the

7    hearing is inconsistent with [his allegation of pain at a 10/10]"; and (4) that "his treatment has

8    been limited to medication, indicating that he has been able to manage his symptoms at this level

9    of care." (Dkt. No. 27 at 7:12-18 (quoting AR 21).)

10    Neither the first nor the fourth reasons can properly form the basis of the ALJ's adverse

11    credibility finding.  The ALJ's general statement regarding Plaintiff's "alleged symptoms" not

12    being "substantiated fully by the record" is not a clear and convincing reason supported by

13    substantial evidence for rejecting Plaintiff's subjective pain testimony as the ALJ did not identify

14    *which* testimony regarding his pain was unsubstantiated by *which* portions of the record.  *See*

15    *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991) ("a reviewing court should not be forced to

16    speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling

17    pain."); *see also Brown–Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that it was

18    legal error for the ALJ to fail "to identify the testimony she found not credible [and ] link that

19    testimony to the particular parts of the record supporting her non-credibility determination.").

20    Likewise, the ALJ's statement regarding Plaintiff's ability to "manage his symptoms" using

21    medication fails to identify *which* symptoms the ALJ is referring to.  To the extent this statement

22    refers to Plaintiff's back pain, the record does not reflect that these symptoms are effectively

23    managed through medication.  Just five months before his ALJ hearing, Plaintiff reported that he

24    has chronic low back pain and that his symptoms continue with his pain at a 10/10.  (AR 620-

25    622.)

26    However, the ALJ's findings regarding Plaintiff's work history and her personal

27    observations of Plaintiff at the hearing are proper bases for an adverse credibility finding.  "An

28    ALJ is required to consider work history when assessing credibility." *Chaney v. Berryhill*, No.

1:18-CV-00171-SKO, 2019 WL 1643240, at *15 (E.D. Cal. Apr. 16, 2019) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (An ALJ "will consider all of the evidence presented, including information about your work record")).  Further, evidence of non-existent work history can provide a clear and convincing reason to discredit a plaintiff's credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding the ALJ's adverse credibility determination which relied in part on plaintiff's "work history was spotty, at best" and she "has shown little propensity to work in her lifetime"); *Moore v. Astrue*, No. CV–08–1567–RC, 2009 WL 1330856, at *6 (C.D. Cal. May 13, 2009) (finding the ALJ properly relied on plaintiff's poor work history to support an adverse credibility determination and collecting cases re: the same).  Here, the last year Plaintiff had earnings commensurate with substantial gainful activity was 2000 when he made $11,747.03 and his earning records reflect numerous years when he made no money and others where he made between $2,000-$4,000.  (AR 199.)

Similarly, Plaintiff's presentation at the hearing not supporting his reports of 10/10 pain given that he did not present any problems ambulating and he did not bring his cane, is a proper basis for the adverse credibility finding.  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding that the ALJ may rely on the fact that the plaintiff did "exhibit symptoms-symptoms that were inconsistent both with the medical evidence and with other behavior [plaintiff] exhibited at the hearing.").

Accordingly, while the ALJ's vague statements regarding Plaintiff's alleged symptoms and his ability to manage them through medication are not clear and convincing reasons supported by substantial evidence for the adverse credibility findings, Plaintiff's work history and the ALJ's personal observations of Plaintiff at the hearing are proper bases for the adverse credibility finding here.

* * *

Because the ALJ's consideration of the medical evidence was not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the RFC determination. The ALJ's error goes to the heart of the disability determination and is not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775

F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

**E. Remand**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

The first prong of the test is not satisfied here because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the ALJ's failure to provide legally sufficient reasons for rejecting the medical opinion evidence of examining psychologist Dr. Franklin and Plaintiff's treating physician Dr. Barnett in favor of the opinions of state agency consultative examiners Dr. Rana and Dr. Spivey.

//

//

//

//

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos.19 and 27.

**IT IS SO ORDERED.**

Dated: September 18, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge